# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ADAM THULL**, | Case No. 3:13-mc-00102 |
| Plaintiff, | |
| v. | **OPINION AND ORDER OF CIVIL CONTEMPT** |
| **TECHTRONIC INDUSTRIES CO., LTD.,** *et al.*, | |
| Defendants. | |

**Michael H. Simon, District Judge**.

This action involves a discovery dispute arising out of third-party subpoenas served in the District of Oregon on an individual and his two affiliated companies (the "Subpoenaed Entities") by Defendants in a lawsuit pending in the United States District Court for the District of Minnesota (the "Underlying Action").[1] In the Underlying Action, Plaintiff alleges a product liability claim arising out of personal injuries received by Plaintiff while using a power table saw manufactured or sold by Defendants. Also in the Underlying Action, the individual served by Defendants with a third-party subpoena seeking documents had already "volunteered" to present

---

[1] *Thull v. Techtronic Indus. Inc., et al.*, No. 11-cv-02368-PAM-LIB (D. Minn.).

testimony as an unpaid expert witness in support of Plaintiff's claim. Further, the two subpoenaed companies, which are affiliated with Plaintiff's "volunteer" expert witness, manufacture and sell power saws, or hold related patents, in competition with Defendants. The subpoenaed individual (Plaintiff's "volunteer" expert witness) and his two affiliated companies filed timely objections to the subpoenas, and Defendants moved to compel. After holding a hearing, the Court granted in part and denied in part Defendants' motion to compel and entered a protective order regarding the treatment of confidential and competitively sensitive material.

The Subpoenaed Entities, however, only partially complied with the Court's discovery order and willfully "declined" to comply with other portions of the Court's order. Defendants then moved for an order of civil contempt against the Subpoenaed Entities for failure to comply with the Court's order. Dkt. 39. The Court held an evidentiary hearing (Dkts. 49 and 50), during which the Subpoenaed Entities candidly admitted that they willfully failed to produce certain responsive documents and explained that they sought a "friendly" order of civil contempt so that they may appeal the Court's discovery rulings. Plaintiff in the Underlying Action took no position on the contempt motion. As more fully explained below, the Court will give to Defendants and the Subpoenaed Entities what they each seek—a "friendly" order of civil contempt with appropriately and narrowly crafted conditional coercive relief.

## BACKGROUND

Plaintiff Adam Thull sued Defendants Techtronic Industries Co., Ltd.; Techtronic Industries North America, Inc.; One World Technologies, Inc.; Ryobi Technologies, Inc.; and Home Depot U.S.A., Inc. (collectively, "Defendants") for product liability in the Underlying Action. The court in the Underlying Action has directed Plaintiff and Defendants to be ready for trial by April 1, 2014.

In the Underlying Action, Defendants caused third-party subpoenas to be issued by the United States District Court for the District of Oregon and served on three related non-parties: SawStop, LLC ("SawStop"), SD3, LLC ("SD3"), and Stephen F. Gass, Ph.D. ("Dr. Gass") (collectively "SawStop" or the "Subpoenaed Entities"). Defendants' subpoenas required the production of responsive documents in Oregon, where the Subpoenaed Entities reside or are found. The Subpoenaed Entities timely objected to Defendants' requests. Thereafter, Defendants commenced this miscellaneous action in the District of Oregon, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B)(i), seeking an order compelling discovery. Dkt. 1.

Dr. Gass invented and patented active injury mitigation technology ("AIMT") for power saws and other similar woodworking equipment.[2] Dr. Gass is president of SawStop and holds both a Ph.D. in physics and a law degree. He has worked as a patent attorney and is a lifelong "woodworker." "The SawStop technology includes a safety system that detects accidental contact between a person and the spinning blade of a saw, and then reacts to minimize any injury." *Santella v. Grizzly Indus., Inc.*, No. 3:12-mc-00131-SI (D. Or.), Dkt. 2, at 13 ¶ 3. Dr. Gass filed the first patent application describing the SawStop technology in 1999, and "[s]ince then, the U.S. Patent and Trademark Office has issued numerous patents disclosing various implementations, features and improvements related to the technology." *Id.* at 14 ¶ 8. Dr. Gass commercialized the first table saw incorporating AIMT in 2004. SD3 holds the patents covering AIMT.

---

[2] This action is substantially similar to a matter the Court previously addressed, *Santella v. Grizzly Industrial, Inc.*, No. 3:12-mc-00131-SI (D. Or.). The Court's brief recitation of the background of the present dispute is taken in part from the Court's September 26, 2012 Opinion and Order in the *Santella* case, *Santella* Dkt. 40.

Defendants manufactured or sold a table saw to Plaintiff that does not incorporate AIMT. Dkt. 3-1, at 4 ¶¶ 11-13. Plaintiff suffered injuries when using this saw. *Id.* at 7 ¶ 33. Plaintiff brought suit, alleging claims of, *inter alia*, strict product liability, breach of implied warranty, and negligence. *Id.* at 8-16.

In the Underlying Action (as well as in other similar actions throughout the United States), Dr. Gass, as a volunteer and without compensation, filed an expert report in which he opines: "It is both economically and technically feasible to redesign the saw at issue to incorporate the SawStop technology." Dkt. 3-2, at 29 ¶ 67. Dr. Gass begins his expert report by noting that he has been asked by Plaintiff's attorneys to "provide fact and expert testimony" in that particular case and is "willing to do so." *Id.* at 1. Dr. Gass then adds: "However, I am neither retained nor specially employed to provide expert testimony, and therefore, I understand a written report of my opinion is not required." *Id.* Presumably, this is why Defendants sought discovery relating to the Subpoenaed Entities through a Rule 45 subpoena to non-parties, rather than under Federal Rule of Civil Procedure 26(a)(2)(B), which relates to discovery from expert witnesses who have been "retained or specially employed to provide expert testimony in the case."

In resolving Defendants' motion to compel, the Court addressed three issues: (1) the validity of Defendants' document requests under Rule 45; (2) whether Defendants' chosen expert witness for trial, Mr. Peter Domeny, may have access to SawStop's confidential documents over the objection of SawStop; and (3) whether SawStop's costs of compliance should be shifted, in whole or in part, to Defendants. The Court granted in part and denied in part Defendants' motion to compel and allowed Mr. Domeny to review SawStop's documents subject to a protective

order. Dkt. 32. The Court's protective order specifically referenced Mr. Domeny. Dkt. 35, at ¶ 3(f).

SawStop provided some of the requested documents, but deliberately declined to provide all responsive discovery that the Court ordered. Defendants then moved for an order of civil contempt. Dkt. 39. During the oral argument and evidentiary hearing on Defendants' motion for civil contempt, SawStop admitted that it willfully did not produce certain documents in response to the Court's order, explaining that it was seeking a "friendly" contempt order so that SawStop could appeal the Court's discovery rulings. Specifically, SawStop acknowledged that it did not produce documents created or received after approximately 2011 that were responsive to the following requests by Defendants:

1.    Request for Production No. 5 (requesting documents referencing false activations of AIMT incorporated into SawStop's commercially available saws);[3]

2.    Request for Production No. 6 (requesting documents showing SawStop's annual sales figures and other financial information relating to AIMT-equipped saws);

3.    Request for Production No. 7 (requesting documents showing SawStop's annual sales figures and other financial information relating to brake cartridges); and

4.    Request for Production No. 8 (requesting documents evidencing or relating to complaints or dissatisfaction with SawStop's AIMT-equipped saws).

*See* Dkt. 32.

## DISCUSSION

### A.    Standards for Civil Contempt

---

[3] As explained by SawStop during the evidentiary hearing held on January 21, 2014, a "false activation" is an activation of the active injury mitigation technology caused by something other than contact with human flesh. Dkt. 50 (transcript from hearing).

The court has the inherent power to enforce compliance with its lawful orders. *Shillitani v. United States,* 384 U.S. 364, 370 (1966). The court is also empowered to enforce compliance with its orders pursuant to 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."). *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1409 n. 4 (9th Cir. 1990) (finding civil contempt encompassed within 18 U.S.C. § 401); *see generally Nilva v. United States*, 352 U.S. 385, 392-96 (1957) (holding that failure of corporation to produce records in its control when requested by subpoena constitutes criminal contempt); *see also* Fed. R. Civ. P. 45(e).

In a civil contempt action, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and Cnty. of S. F.*, 968 F.2d 850, 856 n. 9 (9th Cir. 1992)).

**B.      Findings of Fact**

1.      After providing all interested parties (Plaintiff, Defendants, and the Subpoenaed Entities) with a full and fair opportunity to be heard on Defendants' motion to compel, both in writing and in oral argument, the court issued its written Opinion and Order ("Order") dated August 12, 2013. Dkt. 32. In that Order, the court stated:

> Defendants' Motions to Compel (*Thull* Dkt. 1; *Santillan* Dkt. 1) are GRANTED in part AND DENIED in part as follows: SawStop's objections to *Thull* Requests 1, 6-8, 21, 23, 28, and 30 and *Santillan* Requests 6 and 15 are OVERRULED; SawStop's objections to *Thull* Requests 5, 16-20, 24, and 26 are OVERRULED in part and SUSTAINED in part, and the requests are modified as described in this Opinion and

> Order; and SawStop's objections to *Thull* Requests 9-15 and *Santillan*
> Requests 7-12 are SUSTAINED. In addition, SawStop's Motion for
> Discovery Sanctions (*Thull* Dkt. 8, at 21-23) is DENIED, and SawStop's
> Motion for Costs of Compliance (*Thull* Dkt. 8, at 21-23) is DENIED
> without prejudice. Not later than August 30, 2013, the parties shall confer
> and submit either a joint proposed protective order or separate briefing,
> not to exceed five pages, explaining why the protective order previously
> entered in *Santella* needs to be substantively modified.

Order (Dkt. 32), at 23.

2.      On October 21, 2013, the Court signed a protective order in this matter. Dkt. 35.

That protective order triggered SawStop's obligation to produce the responsive documents

ordered by the Court.

3.      On January 21, 2014, the Court held an oral argument and evidentiary hearing on

Defendants' motion for civil contempt. Dkts. 49 and 50. During that hearing, the Subpoenaed

Entities admitted that they had not produced documents responsive to Defendants' subpoenas,

which the Subpoenaed Entities were required to produce. These documents include, at least,

documents responsive to Defendants' Requests for Production Nos. 5, 6, 7, and 8. At the hearing,

the Subpoenaed entities failed to demonstrate that they were unable to comply with this Court's

Order that these documents be produced. In fact, the Subpoenaed Entities candidly admitted that

they did not produce these documents because they wanted to obtain a "friendly" order of civil

contempt so that they could appeal the Court's underlying discovery rulings. The Subpoenaed

Entities suggested a conditional fine in the amount of $1,000.

4.      Defendants, as the parties moving for a citation of civil contempt against the

Subpoenaed Entities, have shown by clear and convincing evidence that contemnors (the

Subpoenaed Entities) violated a specific and definite order of the Court, namely the Court's

Order dated August 12, 2013 (Dkt. 32).

**C.    Conclusions of Law**

1.    The failure to produce documents or other information in response to a court order can constitute contemptuous conduct. *Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1010-11 (C.D. Cal. 2001); *see also* 18 U.S.C. § 401.

2.    The Subpoenaed Entities have not substantially complied with the Court's Order dated August 12, 2013 (Dkt. 32).

3.    The Subpoenaed Entities have willfully disregarded their obligations under the Court's Order dated August 12, 2013 (Dkt. 32).

4.    Compulsory sanctions, otherwise known as civil sanctions, are intended to coerce a contemnor into compliance with a Court's order. *Productive Mktg., Inc.*, 136 F. Supp. 2d at 1112 (citing *United States v. Ayres*, 166 F.3d 991, 997 (9th Cir. 1999)).

5.    Civil sanctions are appropriate when the "contemnor is able to purge the contempt by his own affirmative act and 'carries the keys of the prison in his own pocket.'" *Id.* (quoting *Ayres,* 166 F.3d at 997).

6.    Conditional fines are appropriate civil sanctions when imposed to coerce compliance. *Id.*

7.    Courts have wide discretion to determine what compensatory contempt fine should be imposed. *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (citing *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). Where compensation is intended, any contempt fine payable to the complainant must "be based upon evidence of complainant's actual loss." *United Mine Workers*, 330 U.S. at 304.

8.    Where the purpose of an order of civil contempt is to make the contemnor comply, the court "must then consider the character and magnitude of the harm threatened by

continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* at 304 (footnote omitted).

**D.      Order of Civil Contempt and Sanctions**

The Court hereby GRANTS Defendants' Motion for Contempt Order for Failure to Comply with Court Order (Dkt. 39) and finds SawStop, LLC; SD3, LLC, and Stephen F. Gass, Ph.D. each to be in contempt of court for failing to comply with this Court's Order dated August 12, 2013 (Dkt. 32). The Court issued a lawful and valid Order on that date directing the Subpoenaed Entities to produce responsive documents to counsel for Defendants. The Subpoenaed Entities did not do so and have not shown good cause or any other valid excuse for their failure to comply with this Court's Order. Accordingly, the Court concludes that each of the three Subpoenaed Entities are in contempt of court for their failure to provide documents as required in the Court's Order dated August 12, 2013 (Dkt. 32). Coercive sanctions are necessary to obtain compliance. Civil contempt sanctions are thus ordered against the Subpoenaed Entities as follows:

1.      As of the date of entry of this order, the Court imposes a conditional fine of $1,000 (the amount suggested by the Subpoenaed Entities), unless the Subpoenaed Entities purge themselves of contempt by producing the documents directed in the Court's Order dated August 12, 2013 (Dkt. 32), not later than 5:00 p.m. Pacific time on Monday, February 10, 2014. If the Subpoenaed Entities produce the required documents by that date and time, then this conditional fine need not be paid. The Court concludes that the amount of the conditional civil contempt sanction stated above is fair and appropriate, especially because the Subpoenaed Entities can avoid the imposition of any conditional sanction merely by providing in a timely

fashion the documents directed in the Court's Order dated August 12, 2013 (Dkt. 32). No

punitive sanctions are being awarded at this time.

2.      In addition, the Court, exercising its equitable powers in this matter, further orders

as follows:

a.      Until the Subpoenaed Entities have purged themselves of this civil

contempt by producing to Defendants the documents directed to be provided by the Court's

Order of August 12, 2013 (Dkt. 32), none of the Subpoenaed Entities, including Dr. Gass, may

provide any declaration, affidavit, deposition testimony, or trial testimony in either the

Underlying Action or in any similar action related to the Subpoenaed Entities' active injury

mitigation technology. It is the opinion of this Court that the documents that are the subject of

this civil contempt order are reasonably necessary for a comprehensive and fair

cross-examination of Dr. Gass by Defendants in the Underlying Action and by the defendants in

any similar lawsuits and that the Subpoenaed Entities should not benefit by their willful refusal

to provide this needed—and court-ordered—discovery.

b.      The Court recognizes, however, that the additional equitable coercive relief

extended by paragraph 2(a) above may work a hardship on the Plaintiff in the Underlying Action

and on any plaintiffs in any similar lawsuits where Dr. Gass's expertise may be relevant. Thus, if

any presiding trial court judge in the Underlying Action or any similar lawsuit affected by this

order believes it appropriate for this civil contempt order to be modified in any way, then:

i.      if, and to the extent that, any such presiding trial court judge has the legal

authority to modify this civil contempt order as it may apply in the case pending before that

judge, such judge may do so; and

       ii.     if any such presiding trial court judge does not have (or does not believe that he or she has) the legal authority to modify this civil contempt order as it may apply in any case pending before that judge, then, upon request from any such judge, this Court will consider making whatever modifications that judge may suggest or request that may be appropriate.

     c.     Defendants are directed to provide a copy of this Opinion and Order of Civil Contempt to the presiding judge in the Underlying Action.

## CONCLUSION

Defendants' Motion for Contempt Order for Failure to Comply with Court Order (Dkt. 39) is GRANTED.

IT IS SO ORDERED.

DATED this 3rd day of February, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge